Isai Eli Ramirez Crohn (360125)
RCA IMMIGRATION, APC
611 S Catalina St., Ste. 222
Los Angeles, CA 90005
Phone: 323-408-0739
isai@rcaimmigration.com

Harun Taskin
*Pro Hac Vice Pending*
Illinois State Bar #6342748
Kent Law Partners LLC
1701 E. Woodfield Rd., Ste. 820
Schaumburg, IL 60173
Phone: (312) 724-5555
Fax: (312) 724-5555
htaskin@kentlawpartners.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| Mirfayz Sobirov,<br><br>Petitioner,<br><br>v.<br><br>Fereti Semaia, Warden, Adelanto ICE Processing Center; Tim Robbins, Field Office Director, ICE Los Angeles Field Office; David J. Venturella, Acting Director, Immigration and Customs Enforcement; Markwayne Mullin, Secretary of the Department of Homeland Security; Todd Blanche, Attorney General, United States Department of Justice, *each in their official capacities.*<br>Respondents. | Case No:<br><br>5:26-cv-04682 Sobirov et al |

**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

## I. INTRODUCTION

1. Petitioner Mirfayz Sobirov is a native of Uzbekistan and citizen of Russia who, on August 15, 2026, was taken into custody by United States Immigration and Customs Enforcement ("ICE") while working as a commercial truck driver in California. Petitioner is presently detained at the Adelanto ICE Processing Center, 10400/10250 Rancho Road, Adelanto, California 92301—within the jurisdiction of this Court. Petitioner challenges the legality of his civil immigration detention pursuant to 28 U.S.C. § 2241.

2. Petitioner did not enter the United States surreptitiously. On May 15, 2023, he presented himself for inspection at the San Ysidro Port of Entry, Pedestrian West facility, and applied for admission. (Ex. 2.) U.S. Customs and Border Protection ("CBP") inspected him, issued him a Notice to Appear ("NTA") charging him as an "arriving alien" who lacked a valid entry document, and—rather than detain him—exercised the discretion conferred by 8 U.S.C. § 1182(d)(5)(A) to parole him into the United States. His electronic Form I-94 records a class of admission of "DT," the CBP designation for parole granted at a port of entry, with an "Admit Until" date of May 13, 2024. (Exs. 1, 2.) In the more than three years since his release, Petitioner has done everything the Government has asked of him: he appeared for his hearings; he filed a Form I-589 Application for Asylum and for Withholding of Removal fourteen days after his arrival (Ex. 3), which U.S. Citizenship and Immigration Services ("USCIS") formally forwarded to the Immigration Court for adjudication (Ex. 4); he retained counsel and filed an updated Form I-589 with the Immigration Court (Ex. 5); he obtained employment authorization from USCIS on the basis of his pending proceedings (Ex. 6); he obtained an Illinois commercial driver's license and worked lawfully as a

commercial truck driver (Ex. 7); and he was awaiting his next master calendar hearing, set for November 18, 2026 before the Chicago Immigration Court, at which his applications for asylum, withholding of removal, and protection under the Convention Against Torture remain pending (Ex. 8). Upon information and belief, he has no criminal history. On August 15, 2026—without notice, without a hearing, and without any individualized determination that he poses a flight risk or a danger—ICE arrested him at his workplace and placed him in detention.

3. Upon information and belief, the Government's basis for detaining Petitioner without any bond hearing rests on the claim that, as a noncitizen who arrived at a port of entry and was paroled, he is subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A), and that his release on parole may be revoked at will. That position cannot be squared with the Ninth Circuit's recent decision in *Rodriguez Vazquez v. Bostock*, No. 25-6842, --- F.4th ----, 2026 WL 2196424 (9th Cir. July 30, 2026), which construed § 1225(b)(2)(A) as reaching only those noncitizens who are presently "seeking admission"—that is, engaged in the affirmative process of seeking entry at the border or a port of entry—and held that noncitizens apprehended in the interior of the country are detained, if at all, under § 1226(a). Nor can it be squared with the consistent line of decisions from judges of this Court ordering the immediate release of previously paroled noncitizens who honored every condition of their release and were then re-detained without process. *Wang v. Marin*, No. 5:26-cv-01910-AS, 2026 WL 1124270 (C.D. Cal. Apr. 24, 2026) (ordering immediate release of noncitizen paroled after presenting himself at the border and later "arrested at his ICE check-in appointment"); *Yang v. Field Office Director, Enforcement and Removal Operations*, No. 5:26-cv-02334-AJR, Dkt. 9 (C.D. Cal. May

18, 2026); *Sydykbekov v. Semaia*, No. 5:26-cv-04105-DKW-DSR, Dkt. 10 (C.D. Cal. July 30, 2026) (report and recommendation), *adopted*, Dkt. 12 (C.D. Cal. Aug. 5, 2026) (ordering immediate release of § 1182(d)(5) parolee re-detained without notice or hearing and enjoining re-detention absent seven days' notice and a pre-deprivation hearing)

4. Petitioner respectfully requests, as his PRIMARY RELIEF, that this Court order his IMMEDIATE RELEASE on recognizance or reasonable conditions. The Government itself paroled Petitioner into the United States in May 2023 and then, for more than three years, treated him as a person at liberty—docketing his removal case, accepting and forwarding his asylum application, granting him employment authorization, transferring venue of his proceedings to the Immigration Court nearest his home, and calendaring his hearings. He honored every obligation that release imposed. The Government has provided no individualized basis—indeed, no explanation at all—for his re-detention. In the alternative, should this Court decline to order immediate release, Petitioner requests that Respondents be ordered to provide him with an individualized bond hearing before a neutral decisionmaker within five (5) business days, at which the Government must bear the burden of demonstrating by clear and convincing evidence both that Petitioner poses a flight risk or danger to the community and that no alternative conditions of release would mitigate those risks. *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871 (C.D. Cal. 2026); *Wang*, 2026 WL 1124270; *see also Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011).

## **II. JURISDICTION AND VENUE**

5. This Court has jurisdiction pursuant to 28 U.S.C. § 2241(a) and (c)(3), which authorizes federal courts to issue writs of habeas corpus on behalf of persons held in custody in violation of the Constitution or laws of the United States. Federal courts have long exercised habeas jurisdiction over the legality of civil immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003). The proper respondent is the custodian in the district of confinement. *Rumsfeld v. Padilla*, 542 U.S. 426, 443–47 (2004). The proper respondent here is Fereti Semaia, Warden of the Adelanto ICE Processing Center, Petitioner's immediate custodian. Jurisdiction attaches upon the filing of this Petition and is not defeated by any subsequent transfer of Petitioner outside this District. *Ex parte Endo*, 323 U.S. 283, 306 (1944); *Padilla*, 542 U.S. at 441.

6. Venue is proper in the Central District of California, Eastern Division, because Petitioner is physically confined at the Adelanto ICE Processing Center in Adelanto, California (San Bernardino County), which lies within this division; his immediate custodian is located within this District

7. Exhaustion of administrative remedies is excused as futile. Petitioner's NTA designates him an "arriving alien." (Ex. 2.) Under the Government's regulations, an arriving alien "remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked," 8 C.F.R. § 1001.1(q), and immigration judges are divested of authority to redetermine the custody of "[a]rriving aliens in removal proceedings, including aliens paroled after arrival," 8 C.F.R. § 1003.19(h)(2)(i)(B). The Board of Immigration Appeals ("BIA") has confirmed that a noncitizen who was processed as an applicant for admission and paroled

under 8 U.S.C. § 1182(d)(5) is treated as detained under § 1225(b) and as ineligible for bond before an immigration judge. *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025); *see also Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) (reaching the same conclusion for noncitizens who entered without inspection). As recently as June 2, 2026, the BIA reaffirmed that line of authority, vacating an immigration judge's bond order and directing that a noncitizen who had "not been admitted" be detained without bond notwithstanding the district court proceedings in *Maldonado Bautista*. *Matter of N-A-G-C-*, 29 I&N Dec. 662 (BIA 2026). Any application for bond before an immigration judge would therefore be pointless. Moreover, requiring exhaustion would cause irreparable harm—continued unlawful confinement, loss of Petitioner's employment, and the disruption of his pending removal proceedings in Chicago. Exhaustion is further excused because the issue is a pure question of law. *See Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

## III. PARTIES

### A. Petitioner

8. MIRFAYZ SOBIROV (A244-051-580) is a native of Uzbekistan and citizen of Russia, born on July 27, 1998 in Bukhara, Uzbekistan. (Exs. 1–3, 5.) He was arrested by ICE on August 15, 2026 in California and is currently detained at the Adelanto ICE Processing Center in Adelanto, California, within the jurisdiction of this Court.

### B. Respondents

9. Respondent FERETI SEMAIA, Warden of the Adelanto ICE Processing Center, is the immediate custodian of Petitioner and the proper respondent in habeas proceedings. Respondent

TIM ROBBINS, Field Office Director of the ICE Los Angeles Field Office, is responsible for the arrest, custody, and detention decisions regarding Petitioner. Respondent DAVID J. VENTURELLA is the Acting Director of Immigration and Customs Enforcement, with supervisory authority over all immigration detention. Respondent MARKWAYNE MULLIN is the Secretary of the Department of Homeland Security, with ultimate authority over immigration enforcement. Respondent TODD BLANCHE is the Attorney General of the United States, who oversees the Executive Office for Immigration Review. All are sued in their official capacities.

## IV. STATEMENT OF FACTS

### A. Background

10. Petitioner Mirfayz Sobirov is a 28-year-old man who was born in Bukhara, Uzbekistan, and is a citizen of Russia. (Exs. 1, 3, 5.) He is married. (Exs. 3, 5.) He seeks asylum, withholding of removal, and protection under the Convention Against Torture in removal proceedings now pending before the Chicago Immigration Court. (Exs. 3, 5, 8.)

### B. Inspection at the San Ysidro Port of Entry, Service of the Notice to Appear, and Parole

11. On May 15, 2023, Petitioner presented himself for inspection at the San Ysidro Port of Entry, Pedestrian West facility, in San Ysidro, California, and applied for admission to the United States. (Ex. 2.) That same day, a CBP officer personally served Petitioner with a Form I-862 Notice to Appear. The NTA checks the box designating Petitioner an "arriving alien"; it alleges that he "applied for admission on May 15, 2023, at the San Ysidro Port of Entry, Pedestrian West facility"

without a valid entry document; and it charges him with inadmissibility under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). The NTA does not charge Petitioner with any criminal, security, or fraud-related ground of inadmissibility. It ordered him to appear before the New York Immigration Court at 26 Federal Plaza on November 7, 2023. (Ex. 2.)

12. Rather than detain Petitioner for the duration of his removal proceedings, DHS released him into the United States on parole pursuant to 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5. CBP issued Petitioner an electronic Form I-94 (Admission I-94 Record No. 360131943A3) reflecting an arrival date of May 15, 2023, a class of admission of "DT"—the CBP code denoting parole granted at a port of entry under INA § 212(d)(5)—and an "Admit Until" date of May 13, 2024. (Ex. 1.) The I-94 itself recites that a record printed from the CBP website "constitutes a lawful record of admission" for "[a]n alien lawfully admitted or paroled into the U.S." (Ex. 1.) Upon information and belief, DHS has never issued Petitioner written notice terminating or revoking his parole, and it has never alleged that he violated any condition of it.

13. On May 19, 2023, DHS filed the NTA with the Executive Office for Immigration Review ("EOIR"), and Petitioner's removal proceedings were docketed before the New York Immigration Court. (Exs. 4, 8.)

### C. Petitioner's Timely Asylum Application and Its Forwarding to the Immigration Court

14. On May 29, 2023—fourteen days after his arrival and ten days after his NTA was docketed with EOIR—Petitioner submitted a Form I-589 Application for Asylum and for

Withholding of Removal, including a request for protection under the Convention Against Torture, to USCIS through its online filing system. (Ex. 3.) USCIS's own records confirm that the application "was received by USCIS . . . on May 29, 2023." (Ex. 4.)

15. Petitioner's online submission to USCIS was made pursuant to the filing procedure USCIS then maintained for asylum applications received shortly after the docketing of an NTA. Under that procedure, where an applicant files a Form I-589 with USCIS within 21 calendar days after DHS files and dockets the NTA with EOIR, USCIS accepts the application, forwards it to the Immigration Court in which the applicant's removal proceedings are pending for adjudication, notifies the applicant of the transfer, and treats the date on which USCIS received the application as the filing date for purposes of the one-year asylum deadline in 8 U.S.C. § 1158(a)(2)(B). Petitioner's application fell squarely within that window: it was received ten days after docketing.

16. USCIS processed the application accordingly. By memorandum dated April 30, 2025, the USCIS Asylum Vetting Center formally notified EOIR that (i) Petitioner "was issued a Notice to Appear which was filed and docketed with EOIR on May 19, 2023"; (ii) Petitioner's "Form I-589 was received by USCIS less than 22 days later, on May 29, 2023"; (iii) because the NTA had been docketed, USCIS lacked jurisdiction over the application as an affirmative matter and would close the affirmative case; and (iv) Petitioner's "I-589 will be forwarded to EOIR for consideration as a defensive application," with a Notice of Transfer of Form I-589 to be provided to Petitioner. (Ex. 4.) That same day, April 30, 2025, EOIR docketed Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture as filed and pending in his removal proceedings. (Ex. 8.) Petitioner's asylum claim has therefore been continuously

pending before the Government—first with USCIS and then with the Immigration Court—since May 29, 2023.

**D. Three Years of Compliance With Removal Proceedings, Work Authorization, and Employment**

17. Petitioner appeared for his initial master calendar hearing before the New York Immigration Court on November 7, 2023, at which the Immigration Judge continued the case to permit Petitioner to seek representation. (Ex. 8.) Petitioner thereafter retained immigration counsel. On July 30, 2024, a motion for continuance filed on Petitioner's behalf was granted, and on August 8, 2024, Petitioner filed a Form EOIR-33 change of address with the Immigration Court, reflecting his relocation to Aurora, Illinois. (Ex. 8.)

18. On September 10, 2024, through counsel, Petitioner filed an updated Form I-589 with the New York Immigration Court. The updated application reflects his Aurora, Illinois address; his I-94 number (360131943A3); his May 15, 2023 arrival at San Ysidro with a status-expiration date of May 13, 2024; his Russian passport (No. 663536841, expiring July 21, 2027); and his acknowledgment that he is "now in Immigration Court proceedings." (Ex. 5.) On November 5, 2024, on Petitioner's motion, Immigration Judge Cathy Sagesse granted a change of venue to the Chicago Immigration Court, where the case was re-docketed. (Ex. 8.) On April 29, 2025, the Chicago Immigration Court scheduled Petitioner's next master calendar hearing for November 18, 2026. (Ex. 8.)

19. Petitioner obtained employment authorization from USCIS on the basis of his pending asylum application and removal proceedings. USCIS issued him a Form I-766 Employment Authorization Document (Card No. IOE9726694450) in category C08—the category for applicants with a pending asylum application—valid from December 17, 2023 through December 16, 2028. (Ex. 6.) On January 31, 2025, the Illinois Secretary of State issued Petitioner a Class A non-domiciled commercial driver's license (No. S161-5409-8213), valid through December 16, 2028. (Ex. 7.) Since obtaining employment authorization, Petitioner has worked lawfully as a commercial truck driver, most recently on routes that took him to California.

20. On June 16, 2026, Petitioner, through counsel, filed a motion for video appearance in connection with his November 18, 2026 master calendar hearing; that motion remains pending. (Ex. 8.) As of August 16, 2026, EOIR's Automated Case Information system confirmed that Petitioner's case is pending before Immigration Judge Robbin Perkins of the Chicago Immigration Court, that no decision has been entered, and that no appeal has been filed. (Ex. 8.)

21. Upon information and belief, Petitioner has no criminal history in the United States or anywhere else. He has never failed to appear for any hearing or obligation imposed by the Government, and he has never been accused of violating any condition of his parole or release.

**E. Petitioner's Re-Detention on August 15, 2026**

22. On August 15, 2026, while Petitioner was working as a commercial truck driver in California, ICE officers took him into custody. Upon information and belief, ICE arrested Petitioner without any advance notice, without any hearing, without service of any individualized

custody determination, and without any explanation of the basis for his detention. Upon information and belief, Respondents have treated Petitioner as subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and have denied him any opportunity to seek release on bond or recognizance.

23. Petitioner is now detained at the Adelanto ICE Processing Center, 10400/10250 Rancho Road, Adelanto, California 92301. At no time has Petitioner been provided an individualized, adversarial bond hearing before a neutral decisionmaker at which the Government bore any burden of proof. His removal proceedings remain pending in Chicago, more than 1,700 miles from his place of detention, with a master calendar hearing scheduled for November 18, 2026. (Ex. 8.) Absent relief from this Court, Petitioner faces the prospect of transfer to a facility outside this District and prolonged detention while his asylum claim awaits adjudication.

## V. LEGAL FRAMEWORK

### A. Federal Habeas Corpus Jurisdiction

24. The writ of habeas corpus is available to every person detained within the United States who challenges the legality of that custody. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). The traditional function of the writ is to secure release from illegal custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Federal courts have habeas jurisdiction over civil immigration detention. *Zadvydas*, 533 U.S. at 688.

### B. The Due Process Rights of Noncitizens Released Into the Community

25. The Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" the Clause protects. *Zadvydas*, 533 U.S. at 690. In this Circuit, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017); *see Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021). When the Government exercises its discretion to release an individual from custody, that release creates "an implicit promise," upon which the individual may rely, that his liberty "will be revoked only if he fails to live up to the . . . conditions [of release]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). District courts throughout this Circuit have accordingly held that noncitizens previously released on bond or discretionary parole have a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969–70 (N.D. Cal. 2019); *Aviles-Mena v. Kaiser*, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025) (previously paroled petitioner entitled to pre-detention hearing); *Madrigal-Cortez v. Santacruz*, No. 2:26-cv-01939-RGK-MAA, 2026 WL 1045639 (C.D. Cal. Feb. 27, 2026) (parolee arrested at a Los Angeles check-in; pre-deprivation hearing required). Whether detention comports with procedural due process is assessed under the three-factor test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying *Mathews* to a challenge to detention under § 1226(a)).

26. Judges of this Court have applied these principles to the precise fact pattern presented here. In *Wang v. Marin*, No. 5:26-cv-01910-AS (C.D. Cal. Apr. 24, 2026), the Court ordered the immediate release of a noncitizen who had been paroled after presenting himself at the border, complied with all conditions of release for years, and was then arrested at an ICE check-in appointment. The Court held that "Petitioner, having been released on parole . . . has a protected due process liberty interest in his continued freedom," that the *Mathews* factors entitled him to notice and a hearing before re-detention, and that release—not a post-hoc bond hearing—was the proper remedy. *Id.* at 4–9. In *Yang v. Field Office Director*, No. 5:26-cv-02334-AJR (C.D. Cal. May 18, 2026), the Court likewise ordered the immediate release of a noncitizen "detained . . . when he reported as required to an ICE-scheduled appointment at the ICE office," reasoning that the arrest of a fully compliant individual "underscores that he was fully compliant with government requirements and therefore cannot reasonably be deemed a flight risk." Slip op. at 3. And in *Sydykbekov v. Semaia*, No. 5:26-cv-04105-DKW-DSR (C.D. Cal. July 30, 2026), *adopted* (C.D. Cal. Aug. 5, 2026), the Court concluded that the continued detention of a § 1182(d)(5) parolee re-detained without notice or a hearing "violates the Due Process Clause of the Fifth Amendment," that "release is necessary to return [him] to the status quo," and that "due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained"; it ordered immediate release under the pre-detention conditions and enjoined re-detention absent seven days' notice and an opportunity to be heard. Dkt. 10 at 5–8; Dkt. 12 at 1–2. Petitioner notes candidly that the Government elected not to oppose the petition in *Sydykbekov*; the Court nonetheless reached and stated its conclusions on the merits. *See also Mourey v. Bowen*, 2026 WL 467567, at *4 (C.D. Cal.

Jan. 31, 2026), *report and recommendation adopted*, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); *Perez Bueno v. Janecka*, No. 5:25-cv-03376-CAS-BFM, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026); *Maldonado Vazquez v. Feeley*, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

**C. The Ninth Circuit's Decision in Rodriguez Vazquez and This Court's Judgment in Maldonado Bautista**

27. On July 30, 2026, the Ninth Circuit held that § 1225(b)(2)(A)'s mandatory-detention command does not reach noncitizens apprehended in the interior of the United States, and that such noncitizens are "subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, No. 25-6842, --- F.4th ----, 2026 WL 2196424 (9th Cir. July 30, 2026). The court explained that § 1225(b)(2)(A) applies to an "alien seeking admission"—language that "has been treated as requiring that an alien be engaged in the affirmative process of attempting to gain 'entry' 'into' the country, which an alien does at the border (or a port of entry)." *Id.* The court grounded that reading in the text of the statute, its reference to an "examining immigration officer," the Supreme Court's description in *Jennings v. Rodriguez*, 583 U.S. 281, 287, 297, 303 (2018), of § 1225(b) as applying "primarily to aliens seeking entry into the United States" and of § 1226 as applying "to aliens already present in the United States," and its own en banc decision in *Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) (en banc), which rejected the theory that an application for

admission "continues, potentially for years or decades." *Rodriguez Vazquez*, 2026 WL 2196424, at *13–15. Six other courts of appeals have reached the same conclusion. *Guerrero Orellana v. Moniz*, Nos. 25-2152, 26-1094 (1st Cir. Aug. 13, 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Cirrus Rojas v. Olson*, No. 25-3127, 2026 WL 2198315 (7th Cir. July 30, 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026). Of particular relevance here, the First Circuit explained—in the course of rejecting the Government's textual argument—that noncitizens returning to the country on advance parole "are 'applicants for admission,' but are not 'seeking admission,'" because being paroled is "a distinct concept from being 'admitted.'" *Guerrero Orellana*, slip op. (majority) (discussing 8 U.S.C. § 1101(a)(13)(A)–(B)).

28. Before the Ninth Circuit ruled, this Court had already reached the same conclusion. On December 18, 2025, this Court entered a declaratory judgment in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 813 F. Supp. 3d 1084 (C.D. Cal. Dec. 18, 2025), holding that noncitizens who entered without inspection and were released into the interior are detained, if at all, under § 1226(a) and "are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." *Maldonado Bautista v. Noem*, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). On March 6, 2026, the Ninth Circuit administratively stayed that judgment only "insofar as [it] extends beyond the Central District of California," Nos. 25-7958 & 26-1044, Dkt. 5 at 1 (9th Cir. Mar. 6, 2026), and continued that limited stay by order dated March 31, 2026, so that the judgment

remained effective within this District, as this Court recognized in *Yang*. The Ninth Circuit's merits decision in *Rodriguez Vazquez* now confirms the correctness of this Court's judgment.

**D. The Government's Clear and Convincing Burden**

29. At any hearing at which Respondents seek to justify Petitioner's continued detention, due process requires the Government to prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871 (C.D. Cal. 2026); *Wang*, 2026 WL 1124270; *Mourey*, 2026 WL 467567, at *6; *see also Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011). The decisionmaker must also consider whether alternative conditions of supervision would adequately mitigate any identified risks. *Wang*, 2026 WL 1124270 (collecting authority); *Hernandez v. Sessions*, 872 F.3d at 981.

## VI. ARGUMENT

**A. PETITIONER'S RE-DETENTION MORE THAN THREE YEARS AFTER HIS RELEASE ON PAROLE, WITHOUT NOTICE OR A PRE-DEPRIVATION HEARING, VIOLATES THE DUE PROCESS CLAUSE AND REQUIRES HIS IMMEDIATE RELEASE.**

**1. <u>Petitioner Has a Protected Liberty Interest in His Continued Freedom.</u>**

30. The Government inspected Petitioner at a port of entry, placed him in removal proceedings, and paroled him into the United States on May 15, 2023—and for the next three years and three months left that release undisturbed. (Exs. 1, 2.) Petitioner relied on that release to build a life: he appeared at his hearings, pursued his asylum claim, obtained work authorization and a commercial driver's license, and supported himself

through lawful employment. Under *Morrissey* and its progeny, that history creates a protected liberty interest in remaining out of custody that cannot be extinguished without process. *Morrissey*, 408 U.S. at 482; *Pinchi*, 792 F. Supp. 3d at 1032; *Wang*, 2026 WL 1124270 (petitioner "having been released on parole . . . has a protected due process liberty interest in his continued freedom"); *Sydykbekov*, Dkt. 10 at 5. That liberty interest does not turn on the stated basis of the parole, and it survives the expiration of the parole period. *Medrano-Rocha*, 817 F. Supp. 3d 871; *D.L.C. v. Wofford*, 820 F. Supp. 3d 1106 (E.D. Cal. 2026). Nor is it diminished by the fact that Petitioner presented himself at a port of entry rather than crossing the border between ports: the petitioner in *Wang* was likewise paroled after presenting himself at the border, and the Court found a protected liberty interest in his continued release. *Wang*, 2026 WL 1124270. Petitioner is not a person "on the threshold of initial entry," *cf. Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); he is a person whom the Government released into the community more than three years ago and who has lived, worked, and litigated his case here with the Government's knowledge and permission ever since. *Zadvydas*, 533 U.S. at 693.

**2. <u>The Mathews Factors Required Notice and a Hearing Before Re-Detention.</u>**

31. Each factor of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), favors Petitioner. First, his private interest is weighty: his liberty, his employment as a commercial driver, and his ability to prepare for and attend the November 18, 2026 hearing at which his asylum claim will proceed. Second, the risk of erroneous deprivation is severe. "The

risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." *Wang*, 2026 WL 1124270 (quoting *Rivera Larios v. Albarran*, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025)). Petitioner's record of appearance and compliance over more than three years—including a pending motion he filed two months before his arrest so that he could appear at his next hearing—demonstrates that he is not a flight risk. (Ex. 8.) Third, there is "no countervailing government interest . . . that supports conducting a bond hearing only after [Petitioner] has been detained, rather than in advance thereof." *Wang*, 2026 WL 1124270 (quoting *Pinchi*, 792 F. Supp. 3d at 1036). Petitioner received no process whatsoever: no notice, no hearing, no individualized determination, no explanation. The Government knew exactly where Petitioner was and how to reach him—it had his address on file, had transferred his case to the Immigration Court nearest his home, and had calendared his next hearing—yet it chose to seize him at his workplace rather than afford him even the rudimentary opportunity to be heard that *Mathews* requires.

### 3. <u>Immediate Release—Not a Post-Hoc Bond Hearing—Is the Proper Remedy.</u>

32. Because Petitioner's arrest itself violated due process, "Petitioner's release is necessary to return him to the status quo," which is his liberty on the conditions that preceded his unlawful re-detention. *Nazarian v. Noem*, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025); *Sydykbekov*, Dkt. 10 at 5–6; *see Yang*, slip op. at 7 (ordering

immediate release on prior conditions of release). A bond hearing conducted only after the fact "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025); *see also Sompal v. Semaia*, 2026 WL 311587, at *2 (C.D. Cal. Feb. 3, 2026) ("[O]rdering a bond hearing without immediate release would not address the harm being done to Petitioner."). *Yang*, *Wang*, and *Sydykbekov* each ordered exactly this remedy—immediate release on prior conditions, with re-detention enjoined absent notice and a pre-deprivation hearing at which the Government bears a clear-and-convincing burden.

**B. THE GOVERNMENT HAS NO VALID STATUTORY AUTHORITY TO SUBJECT PETITIONER TO MANDATORY DETENTION UNDER § 1225(b)(2)(A); ANY DETENTION IS GOVERNED BY § 1226(a).**

**1. <u>A Noncitizen Paroled Into the Interior More Than Three Years Ago Is Not Presently "Seeking Admission" Within the Meaning of § 1225(b)(2)(A).</u>**

33. Section 1225(b)(2)(A) directs that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(A). The Ninth Circuit has now held that the phrase "seeking admission" carries independent meaning and describes a noncitizen "engaged in the affirmative process of attempting to gain 'entry' 'into' the country, which an alien does at the border (or a port of entry)"; the court described this as the "traditional border-focused interpretation" of the provision, and it concluded that a noncitizen present in the interior does not "remain[] in the perpetual

state of seeking admission (that is, seeking entry)." *Rodriguez Vazquez*, 2026 WL 2196424. Petitioner was "seeking admission" on May 15, 2023, when he stood before an examining CBP officer at San Ysidro. But the examining officer did not detain him for his removal proceedings. DHS instead invoked its separate authority under § 1182(d)(5)(A) to parole him into the United States, and Petitioner has lived in the interior—first in New York, then in Illinois—for more than three years, litigating his removal case before two Immigration Courts, filing an asylum application that the Government accepted and forwarded, obtaining Government-issued work authorization, and working. (Exs. 1–8.) When ICE arrested him on August 15, 2026, he was not at any border or port of entry and was not attempting to gain entry into anything; he was driving a truck. Whatever the reach of § 1225(b)(2)(A) at the moment of inspection, it does not authorize the mandatory, no-bond detention of a noncitizen who was released into the interior years earlier and then re-arrested "pending a decision on whether the alien is to be removed"—the situation § 1226(a) governs by its terms. 8 U.S.C. § 1226(a); *see Jennings*, 583 U.S. at 303 ("§ 1226 applies to aliens already present in the United States"); *Esquivel Pacheco v. LaRose*, 818 F. Supp. 3d 1168 (S.D. Cal. 2026) ("seeking admission" refers to a noncitizen presently seeking entry, not a long-term interior resident); *Medrano-Rocha*, 817 F. Supp. 3d 871.

34. The parole statute does not alter that conclusion. Section 1182(d)(5)(A) provides that when "the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from

which he was paroled." The purpose of Petitioner's parole—to permit him to pursue his removal proceedings and his asylum claim while at liberty—has not been served: those proceedings remain pending, with a hearing set for November 18, 2026. (Ex. 8.) Upon information and belief, no DHS official has ever formed or communicated the "opinion" that the purposes of Petitioner's parole have been served; DHS has issued no written notice of termination under 8 C.F.R. § 212.5(e); and DHS never took custody of Petitioner when the "Admit Until" date on his I-94 passed on May 13, 2024. To the contrary, for the twenty-seven months that followed, the Government continued to treat Petitioner as a person lawfully at liberty—transferring venue of his case at his request, forwarding his asylum application to the Immigration Court, granting him employment authorization, and calendaring his hearings. The First Circuit has explained that noncitizens paroled into the country, though "applicants for admission," "are not 'seeking admission,'" because being paroled is "a distinct concept from being 'admitted.'" *Guerrero Orellana*, slip op. (1st Cir. Aug. 13, 2026) (citing 8 U.S.C. § 1101(a)(13)(A)–(B)). And courts in this Circuit have squarely held that a § 1182(d)(5) parolee's protected liberty interest in his release "survives the expiration of the parole period." *D.L.C.*, 820 F. Supp. 3d 1106; *Medrano-Rocha*, 817 F. Supp. 3d 871 (ordering release of a § 1182(d)(5) parolee arrested at a Los Angeles check-in and transferred to Adelanto).

35. This Court's judgment in *Maldonado Bautista*, and the Ninth Circuit's decision in *Rodriguez Vazquez*, addressed noncitizens who entered without inspection. Petitioner

does not contend that either decision resolves, in terms, the status of a noncitizen who was inspected at a port of entry and paroled. But the reasoning of both decisions—that § 1225(b)(2)(A) is a border-inspection provision keyed to the present act of seeking entry, and that § 1226(a) is the default authority for noncitizens arrested in the interior pending removal proceedings—applies with full force to a person whom the Government itself chose to release from the inspection process and into the interior. Indeed, Petitioner's claim is stronger in one respect: unlike a noncitizen who evaded inspection, Petitioner submitted to it, and the Government, having inspected him, affirmatively decided that he need not be detained. Whether Petitioner's custody is analyzed under § 1226(a) directly or through the lens of his three-year parole and release, the result is the same: nothing in the INA authorizes Respondents to seize a fully compliant, previously released noncitizen at his workplace and hold him without any individualized custody determination.

**2. No § 1226(a) Process Has Been Provided.**

36. Upon information and belief, since his arrest on August 15, 2026, Petitioner has received no custody determination, no bond hearing, and no opportunity to contest his detention before any neutral decisionmaker. His detention therefore violates the INA and exceeds the Government's statutory detention authority.

**C. ANY SUGGESTION THAT PETITIONER HAS AN ADEQUATE ADMINISTRATIVE BOND REMEDY IS ILLUSORY: THE REGULATIONS AND THE BIA FORECLOSE BOND FOR PAROLED "ARRIVING ALIENS."**

37. Respondents may argue that habeas relief is unnecessary because Petitioner can simply request a bond hearing—whether under the *Maldonado Bautista* judgment, under *Rodriguez Vazquez*, or otherwise. The administrative reality forecloses that argument, and it does so with particular force for a noncitizen in Petitioner's posture. Petitioner's NTA designates him an "arriving alien." (Ex. 2.) By regulation, "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked," 8 C.F.R. § 1001.1(q), and immigration judges have no authority to redetermine the custody of "[a]rriving aliens in removal proceedings, including aliens paroled after arrival," 8 C.F.R. § 1003.19(h)(2)(i)(B). In *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), the BIA held that a noncitizen who arrived as an applicant for admission and was paroled under § 1182(d)(5) remains subject to detention under § 1225(b) and is ineligible for release on bond before an immigration judge. In *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the BIA extended the same conclusion to noncitizens who entered without inspection. And on June 2, 2026—after the *Maldonado Bautista* judgment, and after the Ninth Circuit's March 6, 2026 order—the BIA decided *Matter of N-A-G-C-*, 29 I&N Dec. 662 (BIA 2026), in which it again "followed" *Yajure Hurtado*, vacated an immigration judge's bond order, and directed that the respondent be "detained without bond," expressly acknowledging and declining to apply the *Bautista* litigation. *Id.* at 663 & n.1.

38. The consequence is that the immigration courts, as an administrative matter, will not entertain a bond application from a noncitizen in Petitioner's posture: the regulations and the BIA treat him as an "arriving alien" and a § 1225(b) detainee with no bond jurisdiction, no matter how

long ago he was released or how complete his compliance. Petitioner cannot be required to pursue relief through an administrative channel that the Government itself has rendered unavailable. This Court's independent habeas authority under 28 U.S.C. § 2241 is the only meaningful forum in which Petitioner can challenge his detention, and the only adequate remedy for a detention that was unlawful at its inception is release. *Preiser*, 411 U.S. at 484; *Zadvydas*, 533 U.S. at 699; *see Yang*, slip op. at 9 n.2 ("The fact that Petitioner could receive a post-deprivation bond hearing while in custody does not remedy the violation of Petitioner's procedural due process rights.").

**D. ADVERSE AUTHORITY DOES NOT PRECLUDE RELIEF IN THIS COURT.**

39. The Government may cite out-of-circuit decisions upholding the mandatory detention of noncitizens who entered without inspection, such as *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Those decisions are not binding in this Circuit, and the Ninth Circuit has now rejected their reasoning, joining the First, Second, Sixth, Seventh, Tenth, and Eleventh Circuits. *Rodriguez Vazquez*, 2026 WL 2196424; *Guerrero Orellana*, slip op.; *Barbosa da Cunha*, 175 F.4th 61; *Lopez-Campos*, 175 F.4th 713; *Cirrus Rojas*, 2026 WL 2198315; *Santillan Quiroz*, 180 F.4th 1226; *Hernandez Alvarez*, 175 F.4th 1258. More fundamentally, those cases address only the statutory classification question; they do not address—much less excuse—the due process violation at the core of this Petition: the revocation, without notice or hearing, of a liberty the Government itself conferred and that Petitioner never abused.

40. The Government may also contend that, because Petitioner arrived at a port of entry, he is an "arriving alien" who—under the so-called entry fiction of *Mezei*, 345 U.S. 206, and

*Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020)—is entitled to no more process than Congress has chosen to provide, and that his parole did not change his legal position, *see Leng May Ma v. Barber*, 357 U.S. 185 (1958). Those authorities do not control here. *Mezei* concerned a noncitizen held continuously at Ellis Island who was never released into the country; *Thuraissigiam* concerned a noncitizen apprehended within yards of the border, placed in expedited removal, and never released; and *Leng May Ma* construed the statutory phrase "within the United States" in a former withholding provision, not the Due Process Clause. None involved a person whom the Government inspected, placed in ordinary § 240 removal proceedings, and paroled into the community for more than three years before seizing him without process. The Supreme Court has made clear that the Due Process Clause protects "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. And judges of this Court have already held that a noncitizen paroled after presenting himself at the border holds a protected liberty interest in his continued release that cannot be revoked without notice and a hearing. *Wang*, 2026 WL 1124270; *see Medrano-Rocha*, 817 F. Supp. 3d 871; *Aviles-Mena*, 2025 WL 2578215, at *5. Nor does *Jennings v. Rodriguez*, 583 U.S. 281 (2018), assist the Government: *Jennings* addressed whether noncitizens held continuously under § 1225(b) from the time of their arrival are statutorily entitled to periodic bond hearings; it did not address whether a parolee released into the interior for years may be re-detained without any process, and it left the petitioners' constitutional claims for resolution on remand. *See id.*

41. Nor does the passing of the "Admit Until" date on Petitioner's I-94 convert him into a present "applicant for admission" subject to mandatory detention. As the court explained in *Esquivel Pacheco*, a noncitizen "seeking admission" within the meaning of § 1225(b) is one presently seeking entry—not a person who has resided in the interior of the United States for years with the Government's knowledge and permission. 818 F. Supp. 3d 1168. A § 1182(d)(5) parolee's protected liberty interest in his release likewise survives the expiration of the parole period. *D.L.C.*, 820 F. Supp. 3d 1106; *Medrano-Rocha*, 817 F. Supp. 3d 871. And here, the Government did nothing for twenty-seven months after that date except continue to process Petitioner as a person at liberty. In any event, the due process violation at the heart of this Petition—re-detention without notice or a pre-deprivation hearing—exists regardless of which detention statute is said to apply.

42. The Government may also rely on *Matter of Q. Li*, *Matter of Yajure Hurtado*, *Matter of N-A-G-C-*, and 8 C.F.R. §§ 1001.1(q) and 1003.19(h)(2)(i)(B) themselves. Those BIA decisions and regulations govern the jurisdiction of immigration judges; they do not bind this Court, and following *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024), this Court owes no deference to the agency's interpretation of the INA's detention provisions. Nor can a regulation restricting the bond jurisdiction of immigration judges enlarge the scope of § 1225(b)(2)(A) beyond what the Ninth Circuit has held its text permits, or displace the requirements of the Due Process Clause. Far from defeating this Petition, those authorities confirm why habeas is Petitioner's only available remedy. *See* Section VI.C, *supra*.

## **VII. CLAIMS**

## CLAIM ONE

**Detention Violates the Immigration and Nationality Act (INA)**

43. Petitioner incorporates by reference the allegations set forth in all preceding paragraphs.

44. Upon information and belief, the Government is detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A), despite the fact that § 1225(b)(2)(A) governs detention arising in connection with the inspection and admission process at the border and ports of entry. Petitioner is not such an individual. He was inspected at the San Ysidro Port of Entry on May 15, 2023, served with a Notice to Appear placing him in ordinary removal proceedings under 8 U.S.C. § 1229a, and paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). (Exs. 1, 2.) He was released into the interior, resided openly in Brooklyn and then Aurora, Illinois, filed a Form I-589 Application for Asylum and Withholding of Removal that remains pending before the Chicago Immigration Court (Exs. 3–5, 8), obtained USCIS-issued employment authorization and an Illinois commercial driver's license (Exs. 6, 7), and complied with every Government instruction for more than three years. Under *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026), and this Court's judgment in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 813 F. Supp. 3d 1084 (C.D. Cal. Dec. 18, 2025), individuals arrested in the interior of the United States pending a decision on removal are detained, if at all, under 8 U.S.C. § 1226(a), which provides for discretionary custody and guarantees an individualized custody determination by a neutral decisionmaker.

45. The parole statute confirms rather than undermines that conclusion. The purposes of Petitioner's parole have not been served; DHS has never issued written notice terminating it; and for more than two years after the "Admit Until" date on Petitioner's I-94, DHS continued to treat him as lawfully at liberty. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e). Judges of this Court have applied this framework to grant habeas relief to previously paroled noncitizens re-detained without process. *Wang v. Marin*, No. 5:26-cv-01910-AS (C.D. Cal. Apr. 24, 2026); *Yang v. Field Office Director*, No. 5:26-cv-02334-AJR (C.D. Cal. May 18, 2026); *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871 (C.D. Cal. 2026).

46. Because Petitioner is not subject to detention under § 1225(b)(2)(A), his continued detention without any individualized custody determination violates the INA, exceeds the Government's statutory detention authority, and is unlawful. Petitioner is entitled to habeas relief, including immediate release, or, in the alternative, a constitutionally adequate bond hearing under 8 U.S.C. § 1226(a).

## CLAIM TWO

### Violation of the Due Process Clause of the Fifth Amendment

47. Petitioner incorporates by reference the allegations set forth in all preceding paragraphs.

48. Petitioner's re-detention without notice, without a pre-deprivation hearing, and without any individualized determination of flight risk or danger violates the Due Process Clause of the Fifth Amendment. The Government paroled Petitioner into the United States on May 15, 2023 and released him into the community; he complied with every obligation of his release for more than

three years; he holds USCIS-issued employment authorization and an Illinois commercial driver's license; he maintained lawful employment; and he has diligently pursued his asylum claim before the Immigration Court. (Exs. 1–8.)

49. Seizing Petitioner at his workplace—while he was doing the very work the Government authorized him to do—and subjecting him to mandatory detention without any procedural safeguards, is arbitrary, punitive, and contrary to the basic guarantees of due process.

50. As the Supreme Court explained in *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), freedom from bodily restraint lies at the core of the liberty protected by the Due Process Clause, which extends to all persons within the United States, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. The Government's discretionary release of Petitioner created "an implicit promise" that his liberty would be revoked only if he failed to honor the conditions of his release. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). He never failed to honor them. Even where the Government possesses authority to detain individuals for immigration purposes, such detention must bear a reasonable relation to its asserted purpose and be accompanied by adequate procedural protections. *See Demore v. Kim*, 538 U.S. 510, 531 (2003).

51. Applying *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), judges of this Court have repeatedly held this year that noncitizens in Petitioner's position were entitled to notice and a hearing before re-detention, and that immediate release is the appropriate remedy for the violation. *Wang*; *Yang*; *Sydykbekov*, Dkt. 10 at 5–8. The Government provides no mechanism for Petitioner to contest his

detention, resulting in detention without process—a result the Supreme Court has repeatedly condemned. *See Zadvydas*, 533 U.S. at 690–92.

52. Accordingly, Petitioner's continued detention violates the Fifth Amendment, and this Court should grant habeas relief and order Petitioner's immediate release, or, at a minimum, a prompt bond hearing with the Government bearing the burden to justify continued detention by clear and convincing evidence. *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871 (C.D. Cal. 2026); *see also Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011).

## CLAIM THREE

### Violation of the Suspension Clause of the U.S. Constitution

53. Petitioner incorporates by reference all preceding paragraphs. The Suspension Clause, U.S. Const. art. I, § 9, cl. 2, guarantees that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." Petitioner's continued detention without access to a meaningful mechanism to challenge the legality of his custody violates this constitutional guarantee.

54. The Supreme Court has long held that habeas relief remains available to noncitizens seeking to challenge unlawful executive detention. *See INS v. St. Cyr*, 533 U.S. 289, 301 (2001). The writ cannot be withdrawn where, as here, the Executive detains an individual without statutory authority and without due process safeguards. *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008).

55. Because the Government has rendered all administrative avenues of relief unavailable—invoking § 1225(b)(2)(A) to assert mandatory detention while simultaneously foreclosing bond jurisdiction before the immigration courts under 8 C.F.R. § 1003.19(h)(2)(i)(B), *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and *Matter of N-A-G-C-*, 29 I&N Dec. 662 (BIA 2026)—Petitioner's only means of challenging his unlawful detention is through this Court's habeas jurisdiction under 28 U.S.C. § 2241. Denial of this petition would constitute an effective suspension of the writ as to Petitioner. This Court must therefore exercise jurisdiction and grant relief.

## REQUEST FOR IMMEDIATE RELEASE

56. Petitioner respectfully submits that the appropriate remedy is immediate release from custody, not merely an order directing Respondents to conduct a bond hearing. The constitutional defect here is the manner of Petitioner's re-detention itself: the Government revoked, without notice or hearing, a liberty it had formally conferred and that Petitioner never abused. A bond hearing ordered now cannot cure that violation. *See Yang*, slip op. at 9 n.2; *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025); *Sompal v. Semaia*, 2026 WL 311587, at *2 (C.D. Cal. Feb. 3, 2026). Nor would an order directing an immigration judge to conduct a bond hearing afford meaningful relief: under 8 C.F.R. § 1003.19(h)(2)(i)(B), *Matter of Q. Li*, *Matter of Yajure Hurtado*, and *Matter of N-A-G-C-*, an immigration judge operating under current regulations and BIA precedent would decline jurisdiction over a paroled "arriving alien," rendering any bond hearing order a nullity.

57. The Government itself previously released Petitioner into the community. On May 15, 2023, after inspecting him at the San Ysidro Port of Entry, DHS paroled Petitioner into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). (Exs. 1, 2.) From May 15, 2023 through August 15, 2026, Petitioner complied with every obligation the Government imposed: he appeared at his hearings, timely pursued his asylum application, updated his address with the Immigration Court, obtained and maintained lawful employment authorization, and worked. (Exs. 1–8.) Upon information and belief, he never came to the attention of law enforcement for any reason.

58. The Government has never alleged, and upon information and belief cannot allege, that Petitioner violated a single condition of his parole or release. No new facts came to light, no criminal conduct intervened, and no change in Petitioner's personal circumstances arose that would justify revocation of the release the Government itself authorized. Upon information and belief, Petitioner's arrest on August 15, 2026 was a categorical enforcement action unsupported by any individualized finding specific to Petitioner's conduct or circumstances. Where the Government has previously released a noncitizen into the community subject to conditions, and where that noncitizen has honored every one of those conditions without deviation, the Government's subsequent decision to re-detain that same individual without any new basis constitutes an arbitrary reversal of its own prior judgment.

59. The combined effect of (a) the absence of any valid statutory basis for mandatory detention; (b) the due process violation inherent in Petitioner's no-notice arrest more than three years after his release; and (c) the unavailability of any administrative forum in which Petitioner can meaningfully seek release, is that there is no adequate remedy short of release. This Court has

independent habeas authority under 28 U.S.C. § 2241 to remedy unlawful detention directly, and "[t]he court shall . . . dispose of the matter as law and justice require." 28 U.S.C. § 2243; *see Carafas v. LaVallee*, 391 U.S. 234, 239 (1968). The appropriate remedy is Petitioner's immediate release under the same or comparable conditions that governed his liberty from May 15, 2023 to August 15, 2026. Petitioner's more than three years of continuous residence, his unbroken compliance, his lawful employment, his pending asylum claim—now scheduled for a master calendar hearing on November 18, 2026—and, upon information and belief, his complete absence of criminal history all confirm what the Government's own prior determination already established: that he poses no flight risk and no danger to the community. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Zadvydas*, 533 U.S. at 699.

60. In the alternative, should this Court determine that immediate release is not warranted at this stage, Petitioner respectfully requests that the Court order Respondents to provide a constitutionally adequate individualized bond hearing before a neutral decisionmaker within five (5) business days, and further order that at such hearing, the burden of proof shall rest entirely upon Respondents. The Government must demonstrate by clear and convincing evidence—not by a preponderance, and not by mere assertion—that Petitioner poses either a danger to the community or a risk of flight, and that no alternative conditions of supervision would adequately mitigate those risks. *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871 (C.D. Cal. 2026); *see also Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). Where, as here, the Government previously released Petitioner into the community, and where Petitioner has honored every condition of that release without exception, it is the Government—not Petitioner—that bears the burden of

explaining why the calculus has changed. The Government must come forward with concrete, individualized evidence—not generalized assumptions about flight risk common to all noncitizens, not speculation about the outcome of Petitioner's pending asylum application, and not categorical reliance on Petitioner's immigration status alone. Effective, less restrictive alternatives to detention—including the very release the Government maintained for more than three years—exist and are readily available. Should Respondents fail to carry that burden by clear and convincing evidence within the time ordered by this Court, Petitioner must be immediately released from custody. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. at 531.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter pursuant to 28 U.S.C. § 2241;
2. Issue an Emergency Order prohibiting Respondents from transferring Petitioner outside this judicial district during the pendency of these proceedings;
3. Grant the Petition for a Writ of Habeas Corpus and hold that Petitioner's continued detention violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment;
4. Issue a Writ of Habeas Corpus directing Respondents to immediately release Petitioner from immigration detention under the same conditions to which he was subject prior to

his re-detention, consistent with the relief granted by this Court in *Sydykbekov v. Semaia*, No. 5:26-cv-04105-DKW-DSR (C.D. Cal. Aug. 5, 2026), *Yang v. Field Office Director*, No. 5:26-cv-02334-AJR (C.D. Cal. May 18, 2026), and *Wang v. Marin*, No. 5:26-cv-01910-AS (C.D. Cal. Apr. 24, 2026);

5. In the alternative, should the Court determine that release is not immediately warranted, order Respondents to provide Petitioner with a constitutionally adequate individualized bond hearing within five (5) business days, at which the Government bears the burden of proving dangerousness or flight risk by clear and convincing evidence and must further establish that no alternative conditions of release would mitigate those risks;

6. Order that if Respondents fail to provide such a hearing within the specified time, or fail to meet their burden of proof, Petitioner must be immediately released from custody;

7. Enjoin and restrain Respondents from re-detaining Petitioner absent at least seven (7) days' notice and a pre-deprivation hearing before a neutral decisionmaker at which the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community, consistent with the orders in *Sydykbekov*, *Yang*, and *Wang*;

8. Upon Petitioner's release, order Respondents to return any personal belongings and identification documents taken from him in connection with his detention; and

9. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted on August 17, 2026.

**COUNSEL FOR PETITIONER**

/s/ *Harun Taskin*
Harun Taskin
**Pro Hac Vice Pending*
Illinois State Bar #6342748
Kent Law Partners LLC
1701 E. Woodfield Rd., Ste. 820
Schaumburg, IL 60173
Phone: (312) 724-5555
Fax: 312-724-5555
htaskin@kentlawpartners.com

*/s/ Isai Eli Ramirez Crohn*
Isai Eli Ramirez Crohn (360125)
RCA IMMIGRATION, APC
611 S Catalina St, Ste 222
Los Angeles, CA 90005
Phone: 323-408-0739
isai@rcaimmigration.com

## INDEX OF EXHIBITS

**Ex. 1** — CBP electronic Form I-94 Arrival/Departure Record (Admission I-94 Record No. 360131943A3): arrival May 15, 2023; Class of Admission "DT" (parole granted at port of entry); Admit Until May 13, 2024

**Ex. 2** — Form I-862 Notice to Appear dated and personally served May 15, 2023 at San Ysidro, California (arriving alien; INA § 212(a)(7)(A)(i)(I)), with Form I-831 continuation page

**Ex. 3** — Form I-589 Application for Asylum and for Withholding of Removal, page 1, submitted online to USCIS on May 29, 2023 (submission stamp 2023-05-30 03:53 UTC)

**Ex. 4** — USCIS Asylum Vetting Center Memorandum to EOIR re: I-589 Forwarding, dated April 30, 2025 (NTA docketed May 19, 2023; I-589 received May 29, 2023; application forwarded to EOIR as defensive application)

**Ex. 5** — Updated Form I-589 Application for Asylum and for Withholding of Removal, page 1, filed with the New York Immigration Court on September 10, 2024 (Aurora, Illinois address; I-94 No. 360131943A3; Russian passport No. 663536841)

**Ex. 6** — USCIS Form I-766 Employment Authorization Document, Card No. IOE9726694450, Category C08 (pending asylum application), valid December 17, 2023 through December 16, 2028

**Ex. 7** — Illinois Secretary of State Class A Non-Domiciled Commercial Driver's License No. S161-5409-8213, issued January 31, 2025, expiring December 16, 2028

**Ex. 8** — EOIR Automated Case Information printouts for A244-051-580 (retrieved August 16, 2026): case overview, record of proceedings, and next hearing (November 18, 2026, Chicago Immigration Court, IJ Robbin Perkins)

## 28 U.S.C. § 2242 VERIFICATION STATEMENT

I am submitting this verification on behalf of the Petitioner because I am the Petitioner's attorney. I have reviewed the relevant documentation of the events described in this Petition that was reasonably available to me prior to and at the time of filing. Based on those documents and on discussions with individuals whom the Petitioner authorized to speak on his behalf, I hereby verify that the statements made in this Verified Petition are true and correct to the best of my knowledge.

Respectfully submitted on August 18, 2026.

**COUNSEL FOR PETITIONER,**

/s/ *Harun Taskin*
**Pro Hac Vice Pending*
Harun Taskin, Esq.
Illinois State Bar # 6342748
Kent Law Partners LLC
1701 E Woodfield Rd. Suite 820
Schaumburg, IL 60173
Phone: 312-724-5555
Fax: 312-724-5555
htaskin@kentlawpartners.com